### TEXAS DEPARTMENT OF TRANSPORTATION, Appellant,

v.

### Toni BEDERKA, Wilma Berger and Patrick Berger, Individually and as the Representative of the Estate of Stacey Berger, Deceased, Appellees.

#### No. 09–00–340 CV.

Court of Appeals of Texas, Beaumont.

Submitted Jan. 11, 2001.

Decided Feb. 15, 2001.

John Cornyn, Attorney General, Michael Ratliff, Assistant Attorney General, Austin, for appellant.

R. Martin Weber, Jr., Davis & Davis, Houston, for appellee.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

WALKER, Chief Justice.

■ The Texas Department of Transportation appeals the denial of its plea to the jurisdiction asserting sovereign immunity. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2000). The issue presented asks whether sovereign immunity is waived under the Texas Tort Claims Act for failing to place additional or different traffic control devices at an intersection.

On January 8, 1999, Toni Bederka and Stacey Berger were passengers in vehicles that were involved in a collision at the intersection of State Highway 105 and F.M. 1486 in Montgomery County, Texas.[1] Berger died from injuries sustained in the collision. Her parents, Wilma Berger and Patrick Berger, joined Bederka in a suit filed against the Department. They state their cause of action as follows:

Prior to January 8, 1999, Defendant TXDOT accepted responsibility for the placement of, and had erected, traffic control signals and signs at the Intersection. Such action on the part of Defendant TXDOT created an ongoing duty on the part of Defendant TXDOT to remedy and correct dangerous conditions at the Intersection. Subsequent to the placement of the traffic control signals and signs at the Intersection, but prior to January 8, 1999, Defendant TXDOT had actual notice of the continuing dangerous condition of the Intersection. However, Defendant TXDOT breached its duty by failing to conduct proper traffic studies, and failing to erect additional and/or different traffic control signals and signs to remedy the dangerous condition of the Intersection within a reasonable time following receipt of actual notice of the dangerous condition. Additionally, the traffic control signals and signs initially placed near and around the Intersection created a dangerous condition at the Intersection that Defendant TXDOT failed to remedy in a timely manner, even though TXDOT received actual notice of the dangerous condition. Such acts and omissions proximately caused the January 8, 1999 collision, Plaintiff Toni Bederka's injuries, and Stacey Berger's death. It is Plaintiffs' position that this claim is not barred by the Texas Tort Claims Act because TXDOT failed to correct the dangerous condition and failed to erect additional and/or different control signals and signs within a reasonable time following receipt of notice

---

1. The pleadings do not describe the scene. At oral argument, counsel informed the Court that yellow flashing lights were placed on Highway 105 and red flashing lights were placed on Highway 1486.

of the dangerous condition. *See* TEX. CIV. PRAC. & REM.CODE § 101.60(a)(2).[2]

The Tort Claims Act waives sovereign immunity for personal injury and death caused by a condition or use of tangible or real property. TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997). The government owes only the duty owed to a licensee in a premises defect claim. TEX. CIV. PRAC. & REM.CODE ANN. § 101.022 (Vernon 1997). The limitation of duty does not apply to the duty to warn of special defects such as excavations or obstructions on highways, or to the duty to warn of the absence, condition, or malfunction of traffic signs. TEX. CIV. PRAC. & REM.CODE ANN. § 101.022 (Vernon 1997).

Section 101.060 provides:

(a) This chapter does not apply to a claim arising from:

(1) the failure of a governmental unit initially to place a traffic or road sign, signal, or warning device if the failure is a result of discretionary action of the governmental unit;

(2) the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice; or

(3) the removal or destruction of a traffic or road sign, signal, or warning device by a third person unless the governmental unit fails to correct the removal or destruction within a reasonable time after actual notice.

(b) The signs, signals, and warning devices referred to in this section are those used in connection with hazards normally connected with the use of the roadway.

(c) This section does not apply to the duty to warn of special defects such as excavations or roadway obstructions.

Section 101.056 contains other limitations on governmental liability under the Tort Claims Act:

This chapter does not apply to a claim based on:

(1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or

(2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.056 (Vernon 1997).

The appellees alleged that, after signs or signals were placed at the intersection, the Department: 1) failed to conduct proper traffic studies; 2) failed to erect additional or different traffic control signals; and 3) failed to remedy a dangerous condition created by traffic control signals or signs placed near and around the intersection. The Department contends all the plaintiffs' allegations of the Department's negligence fall within the confines of discretionary design immunity. Section 101.056 retains sovereign immunity for the performance or nonperformance of any act left to the sovereign's discretion.

Two cases from our Supreme Court illustrate the extent to which Section 101.056 retains sovereign immunity. In *State v. Miguel,* 2 S.W.3d 249, 251 (Tex. 1999), the Supreme Court held that the Department's decision to warn of a missing guardrail with barrels and signs, as opposed to another warning device, was discretionary. The Court noted, "Decisions about highway design and about what type of safety features to install are discretionary policy decisions." *Id.* In *State v. Rodriguez,* 985 S.W.2d 83, 86 (Tex.1999), the Supreme Court held that the governmental units retained sovereign immunity under Section 101.056 for the design of a

2. TEX CIV.PRAC. & REM.CODE ANN. § 101.060 (Vernon 1997).

detour and under Section 101.060 for sign placement.

■ The retention of immunity for discretionary decisions does not preclude waiver of immunity under another section of the Tort Claims Act. In *Rodriguez,* the Supreme Court reasoned that even if the sign placement was discretionary, immunity would be waived if the detour's alleged defects were special defects under Section 101.060(c). *Rodriguez,* 985 S.W.2d at 86. The *Rodriguez* accident occurred as the deceased attempted to maneuver his rig through a detour around an excavation. *Id.* The Supreme Court held the excavation itself was not the cause of the accident and the detour's 90 degree turn and other design flaws were not a condition of the same kind or class as an excavation. *Id.* The Court held section 101.060(c) did not apply. *Id.*

The appellees argue their claims fall within 101.060(a)(2). Immunity is retained unless the absence, condition, or malfunction of a traffic sign, signal, or warning device is not corrected by the governmental unit within a reasonable time after notice. TEX. CIV. PRAC. & REM.CODE ANN. § 101.060(a)(2) (Vernon 1997). The appellees pleaded the Department had notice; the issue is whether they have pleaded the Department failed to correct the absence, condition, or malfunction of a traffic sign or signal.

The opinions cited by the appellees provide some support for their position. In *Reyes v. City of Houston,* 4 S.W.3d 459, 462 (Tex.App.—Houston [1st Dist.] 1999, writ denied), the First Court of Appeals held the city could be sued under Section 101.060(a)(2) for an accident allegedly caused by the "absence of a barricade" at a dead end street, notwithstanding Section 101.056. In *Garza v. State,* 878 S.W.2d 671, 675 (Tex.App.—Corpus Christi 1994, no writ), the Thirteenth Court of Appeals ruled that the speed limit posted on a sign presented a "condition" of the sign for which immunity was waived under Section 101.060(a)(2). The correctly posted limit

was dangerous because of its proximity to a school. *Id.* The Court relied upon *Sparkman v. Maxwell,* 519 S.W.2d 852 (Tex.1975), to support its holding. In *Sparkman,* the city altered a traffic light by placing an arrow template over the red light. During the two-week trial period, a confused motorist entered the intersection at the wrong time, striking another vehicle. The injured party sued the motorist and the city. The light, although functioning as designed, did not function as desired, and the Supreme Court found sovereign immunity to be waived due to a condition of the signal. *Id.* at 858.

The Austin Court of Appeals disagreed with the *Garza* analysis in an opinion addressing the issue of whether an accurately posted but unsafe speed limit was a "condition" of a traffic control device. *Bellnoa v. City of Austin,* 894 S.W.2d 821, 825 (Tex.App.—Austin 1995, no writ). The *Bellnoa* court reasoned that in both cases the source of the alleged problem was the setting of the legal speed limit, not the sign displaying the limit. *Id.* *Sparkman,* the *Bellnoa* court reasoned, is confined to cases where the problem was independent of the decision to place the signal at the intersection. *Id.*

In *Sparkman,* the discretionary body's intention in placing that particular traffic control device was to inform left-turning motorists when to turn. The device installed prompted motorists to enter the intersection at the wrong time. Thus, the device did not function as intended. In *Bellnoa,* on the other hand, there was no problem with the sign independent of the discretionary decision to raise the limit from 30 miles per hour to 40 miles per hour. *Bellnoa,* 894 S.W.2d at 825.

The distinction between *Sparkman* and *Bellnoa* was explored in a recent opinion from the El Paso Court of Appeals. *City of Midland v. Sullivan,* 33 S.W.3d 1 (Tex. App.—El Paso 2000). In *Sullivan,* the discretionary body intended to lower the speed limit half an hour before classes

started at the school, but through inadvertence the ordinance setting the time for the lower speed limit was not changed when the school added an early morning class to its schedule. *Id.* at 6. Thus, the sign posted the correct speed limit, but did not function as intended by the discretionary body. *Id.* at 13. The court reasoned that the Sullivans' pleadings regarding the posted time for the school zone fit within the inadvertent state of being that *Sparkman* held to be a "condition" of the traffic control device for which immunity had not been retained under the predecessor to section 101.060(a)(2). *Id.* at 12. The court then reviewed the Sullivans' allegations regarding the design of the crosswalk and the poor visibility of its pavement markers. *Id.* at 14. The disrepair of the pavement markers related to their condition under section 101.060(a)(2). *Id.* The crosswalk design, on the other hand, involved a discretionary act for which immunity was retained under Section 101.056. *Id.* at 14–15. The claim relating to the time posted on the school zone was subject to a suit for negligent implementation of the discretionary policy. *Id.* at 15.

■ Section 101.060(a)(2) cannot be read so broadly as to waive sovereign immunity whenever the governmental entity has notice of the existence of a dangerous condition where it has previously installed traffic signs or signals. Such a broad construction would render section 101.060(a)(1) meaningless. Nor may *Sparkman* be so broadly read. Section 101.060(a)(2) includes an exception to what is clearly a retention of sovereign immunity. Applying the exception in 101.060(a)(2) to a condition of the *intersection*, rather than to a condition of the *signal* itself, would be inconsistent with section 101.060(a)(1) and the Supreme Court's decisions in *Miguel* and *Rodriguez*. There is no waiver of immunity regarding the decision to place particular traffic signals, regardless of notice of the dangerous condition. *Sparkman* acknowledged that a "condition" of a traffic signal included an inadvertent state of its being; that is, the signal was intended to elicit a particular response but in fact elicited another. *Sparkman,* 519 S.W.2d at 858. No allegation of a similar nature has been made in the appellees' first amended petition. Rather, the petition alleges the signs created a dangerous condition *at the intersection,* which the Department failed to correct by erecting additional or different signs or signals. This allegation relates to the selection of the traffic control device and the decision to utilize particular devices on the date of the accident. We follow the rationale employed in *Bellnoa;* the Department enjoys immunity from suit regarding its decision to place a particular traffic control signal, even if the signal fails to make the premises safe. The selection of the device employed is not its condition.

■ This appeal is analogous to *Rodriguez.* The pleadings filed by appellees acknowledge traffic signs or signals were present, but failed to make the intersection safe. The appellees attempt to circumvent the strictures of section 101.060(a) by alleging that the existing signs or signals created a dangerous condition at the intersection. The Department's decision to place particular traffic signs or signals is the very decision for which immunity is retained under section 101.060(a). Choosing not to change the signs and signals in spite of evidence that accidents are occurring at the intersection is a policy decision subject to the discretionary authority referred to in section 101.056.

■ The appellees argue they properly pleaded a claim for negligent implementation of a discretionary decision. The decision of what device to install, and when to install it, are discretionary functions for which sovereign immunity is retained. Once the discretionary body decides to install a particular traffic signal, however, that decision must be implemented within a reasonable time. *Zambory v. City of Dallas,* 838 S.W.2d 580, 582–83 (Tex. App.—Dallas 1992, writ denied). A policy

decision to install a traffic device at a particular time falls within the ambit of sovereign immunity. *Bookman v. Bolt,* 881 S.W.2d 771, 776 (Tex.App.—Dallas 1994, writ denied). On the other hand, the non-discretionary implementation of the policy decision to install a different device is a matter for which immunity has been waived. *See Zambory,* 838 S.W.2d at 582. Such would be the absence of a particular traffic device under 101.060(a)(2), not the condition of the device under that section. *See id.* at 583. The appellees' first amended petition alleges the Department had notice of the dangerous condition of the intersection, but contains no allegation that the Department acted to remedy the condition but negligently failed to implement that decision. It cannot be said that the petition included a claim for negligent implementation of a discretionary act.

In response to the plea to the jurisdiction, however, the appellees attached a letter from the Department, written after the accident, that acknowledged that a June 1998 traffic control study resulted in a recommendation that special advance warning lights be installed, tentatively in the second quarter of 1999. This letter is significant not for what it discloses, but for what remains unstated. The first amended petition does not allege that the Department made a discretionary decision which had not been implemented at the subordinate, operational level. In their brief, the appellees ask us to provide them that opportunity. The Department's reply brief assumes that the timing of the project was a discretionary decision, but does not argue that the allegations could not be restated to provide for jurisdiction.

The Bergers' and Bederka's first amended petition failed to allege a claim for which sovereign immunity is waived under the Tort Claims Act, thus, the trial court erred in denying the Department's plea to the jurisdiction. Under appellees' current pleadings they have stated no cause of action against the State for which immunity has been waived. Had appellees made no request of this Court to amend their pleadings, we would render a judgment of dismissal. When a party has proceeded under a wrong legal theory, however, we have discretion to remand in the interest of justice. Tex.R.App. P. 43.3(b); *see Boyles v. Kerr,* 855 S.W.2d 593, 603 (Tex.1993). We exercise our discretion under Rule 43.3(b) and grant appellees' request for a remand to permit them an opportunity to amend their pleadings.

The order denying the Department's plea to the jurisdiction is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

BURGESS, Justice, concurring.

I reluctantly concur. I concur rather than dissent because the majority does not render against the appellees. However, I would affirm the trial judge because I believe paragraph 6 of the Plaintiffs' First Amended Original Petition, which states: "Additionally, the traffic control signals and signs initially placed near and around the Intersection created a dangerous condition at the Intersection that Defendant TXDOT failed to remedy in a timely manner, even though TXDOT received actual notice of the dangerous condition," is within the holdings of *Sparkman v. Maxwell,* 519 S.W.2d 852 (Tex.1975) and *Garza v. State,* 878 S.W.2d 671 (Tex.App.—Corpus Christi 1994, no writ).