**Texas DEPARTMENT OF TRANSPORTATION,**
Appellant,

v.

**Vincent SANCHEZ, Representative of the Estate of Ernestina Alejandro, Deceased; Eddie Alejandro; Jose Alejandro; Maria Del Socorro Toscano; Janie Montalvo; Rey Alejandro; Rene Alejandro; Viola De La Rosa, Individually and as Next Friend for John De La Rosa and Joel De La Rosa, Minors; Michael Alejandro, Individually and as Next Friend for Andrew Alejandro,**
Appellees.

No. 04–01–00267–CV.

Court of Appeals of Texas, San Antonio.

Oct. 24, 2001.

Rehearing Overruled March 25, 2002.

Susan Desmarais Bonnen, William E. Williams, III, Asst. Atty. Gen., Austin, for Appellant.

Christine H. Campbell, Law Offices of Hugh McWilliams, Larry Zinn, Attorney At Law, Fidel Rodriguez, Jr., Rodriguez, Ketterman & Lopez, M. Stephen Cichowski & Gonzalez, P.C., Daniel O. Kustoff (ADL) Lang & Kustoff, L.L.P., Frank Herrera, Jr. (ADL) Laura E. Gutierrez Tamez (ADL) Law Offices of Frank Herrera, Inc., Ernest G. Valdez (ADL) Law Office of Ernest Valdez, San Antonio, for Appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN and SARAH B. DUNCAN, Justices.

Opinion by SARAH B. DUNCAN, Justice.

The Texas Department of Transportation appeals the trial court's denial of its plea to the jurisdiction. TXDOT's appeal requires that we interpret sections 101.056(2) and 101.060(a)(2) of the Texas Tort Claims Act. We hold (1) a traffic

signal is not "absent" for purposes of section 101.060(a)(2) of the Tort Claims Act unless it was placed in service and subsequently removed; and (2) the State's setting of the clearance interval for a traffic signal at 3.5 seconds is not a "condition" of a signal for which immunity is waived under the circumstances set out in section 101.060(a)(2). Rather, it is the discretionary selection of the appropriate signal to be used at an intersection for which sovereign immunity is retained under section 101.056(1). We therefore reverse the trial court's order and render judgment in TXDOT's favor.

## STANDARD AND SCOPE OF REVIEW

 We review the trial court's determination of subject matter jurisdiction, including its construction of pertinent statutes, de novo. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998), *cert. denied*, 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999)."[A] court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. The court should, of course, confine itself to the evidence relevant to the jurisdictional issue." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex.2000).

## FACTUAL AND PROCEDURAL BACKGROUND

This wrongful death, survival, and personal injury action arises out of a fatal accident at the intersection of St. Mary's Street and Stadium Drive in San Antonio. At the time of the accident, traffic at the intersection was controlled with a four section head traffic signal,[1] which was installed and maintained by the Texas Depart-

ment of Transportation. Plaintiffs allege the accident was caused by TXDOT's negligence in (1) failing to upgrade the four section head signal to a five section head signal, which would have included an amber left turn arrow; and (2) failing to increase the 3.5 second vehicle change interval between the moment the left turn light was extinguished and the green circular light for oncoming traffic was illuminated. TXDOT filed a plea to the jurisdiction, contending the plaintiffs' pleadings fail to establish a waiver of sovereign immunity. The trial court denied the motion, and TXDOT appealed.

## DISCUSSION

 As a general rule, the State (including TXDOT) is immune from suit unless immunity has been waived. *Texas Dept. of Transp. v. Able*, 35 S.W.3d 608, 611 (Tex.2000). The Texas Tort Claims Act provides that the State waives its sovereign immunity for "personal injury and death so caused by a condition or use of . . . real property if the governmental unit would, were it a private person, be liable to the claimant. . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (Vernon 1997). However, sovereign immunity is not waived for a claim arising from "the absence, condition, or malfunction of a traffic . . . signal . . . unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice." *Id.* § 101.060(a)(2). Nor is sovereign immunity waived for discretionary acts, including "what type of safety features to install" on a roadway. *State v. Miguel*, 2 S.W.3d 249, 251 (Tex.1999) (per curiam); *see* TEX. CIV. PRAC. & REM.CODE ANN. § 101.056(2). To establish a waiver of sovereign immunity,

---

1. A four section head traffic signal has circular lamps for red, amber, and green, as well as a green left turn arrow. A five section head traffic signal has these lamps, as well as an amber left turn arrow.

the plaintiffs contend the lack of an amber left turn arrow on the traffic signal was the "absence" of a traffic signal; and the 3.5 second vehicle change interval was a "condition" of the traffic signal.

### *"Absence" of Amber Arrow*

■ The plaintiffs contend the lack of an amber arrow constitutes the "absence" of a traffic signal. We disagree. As we have previously noted, "[s]ubsection (a)(2) pertains to a sign or warning device that was in place at one time but was subsequently removed." *City of San Antonio v. Schneider*, 787 S.W.2d 459, 468 (Tex. App.—San Antonio 1990, writ denied). There is no evidence an amber left turn arrow ever existed at the intersection where the accident occurred. Accordingly, it could not have been "absent" at the time of the accident.

Rather than cite this court to *Schneider*, the plaintiffs rely on *Texas Dept. of Transp. v. Bederka*, 36 S.W.3d 266 (Tex. App.—Beaumont 2001, no pet.), and *City of Fort Worth v. Robles*, 51 S.W.3d 436 (Tex.App.—Fort Worth 2001, pet. filed), in which the courts held "if the traffic device is not installed after the policy decision [to install one] is made, then it would constitute 'absence' under 101.060(a)(2)." *Id.* at 442; *see also Bederka*, 36 S.W.3d at 272 ("[s]uch would be the absence of a particular traffic device under 101.060(a)(2)"). Both decisions rely upon *Zambory v. City of Dallas*, 838 S.W.2d 580 (Tex.App.—Dallas 1992, writ denied). In *Robles*, the court concluded there was no evidence the city had decided to install a traffic device before the accident, while in *Bederka* and *Zambory* the courts concluded there was some evidence the governmental entity had decided to install a traffic device but did not implement that decision before the accident. *See Bederka*, 36 S.W.3d at 272; *Robles*, 51 S.W.3d at 442; *Zambory*, 838

S.W.2d at 582. We need not address whether these decisions correctly reflect Texas law, because the plaintiffs have failed to establish that TXDOT had decided to upgrade the signal.

To support their argument, the plaintiffs cite excerpts from the depositions of Jimmy K. Walch, a maintenance worker and later a supervisor in TXDOT's San Antonio office, and Gilbert Meier, the manager of the traffic signal operations section in TXDOT's San Antonio office. However, these witnesses did not testify TXDOT had decided to upgrade the signal. Rather, they testified that the signal was on a list of signals to be upgraded, but it had not yet reached the top of the list. Their testimony is consistent with that of Arnulfo Ramirez, the traffic engineer who supervised and monitored the operation and maintenance of the signal at the intersection where the accident occurred. According to Ramirez, the Texas Manual on Uniform Traffic Control Devices 1980 "did not require existing four section traffic signal heads of the traffic signal system in question to be replaced with a five section traffic signal head with a yellow arrow signal." Rather, the manual in effect at the time of the accident specifically stated: "All existing traffic control devices or installations not in conformance with standards in this Manual shall be changed to conform to the new standards in this Manual when replacement becomes necessary." Ramirez further testified "[b]efore the time of the accident in question, replacement of the 4 section head was not necessary because there was no indication of accident history or complaints that would make replacement a higher priority than other actions needed at other locations." In short, TXDOT had decided not to upgrade the four section head to a five section head until replacement was "necessary"; and replacement had not become "necessary" by the time of the accident.

Under these circumstances, an amber left turn arrow was not the "absence" of a traffic signal even under the authorities cited by the plaintiffs.

### 3.5 Second Vehicle Change Interval

■ The plaintiffs next contend the 3.5 second vehicle change interval was a "condition" of the signal for which immunity was waived under section 101.060(a)(2). In response, TXDOT argues that setting the vehicle change interval at 3.5 seconds was a discretionary act under paragraph 4B–15 of the Texas Manual on Uniform Traffic Control Devices; and it retains immunity for this discretionary act. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.056(1). The plaintiffs argue, on the other hand, that section 101.056 does not apply to claims arising under section 101.060. *See City of Midland v. Sullivan,* 33 S.W.3d 1, 14 (Tex.App.—El Paso 2000, pet. dism'd w.o.j.); *Reyes v. City of Houston,* 4 S.W.3d 459, 462 (Tex.App.—Houston [1st Dist.] 1999, pet. denied); *Harris County v. Demny,* 886 S.W.2d 330, 336 n. 1(Tex.App.—Houston [1st Dist.] 1994, writ denied). These decisions reason that if section 101.056's broad exemption for discretionary acts applies to all claims arising under section 101.060, the retention of immunity for the failure to install a traffic device as a result of discretionary action in section 101.060(a)(1) would be "redundant and the legislature's decision not to include this same language in subsections (a)(2) and (a)(3) is rendered meaningless." *Sullivan,* 33 S.W.3d at 14.

We recognize the superficial appeal of this reasoning. But it proves too much. "Each of the twelve exemptions listed in [subchapter C] is a distinct exemption, complete unto itself." *State v. Terrell,* 588 S.W.2d 784, 788–89 (Tex.1979). Thus, the exemption provided for discretionary acts in section 101.056 is "broad enough to encompass the exclusion for failure to provide police or fire protection" under section 101.055(3). *Id.* at 787. Not surprisingly, therefore, the Supreme Court of Texas cited both section 101.056 and section 101.060(a)(1) in stating "the court of appeals recognized that the State would be immune from liability if its failure to place a sign were discretionary." *State Dept. of Highways & Pub. Transp. v. King,* 808 S.W.2d 465, 466 (Tex.1991) (per curiam). *See also State v. Miguel,* 2 S.W.3d 249, 250 (Tex.1999) (per curiam).

In light of these decisions, we believe the proper analysis of the plaintiffs' claim is two-fold. First, we must determine whether setting the clearance interval at 3.5 seconds was a discretionary act for which immunity is retained in section 101.056(2). Next we must decide whether immunity for this discretionary act is waived in section 101.060(a)(2).

"Decisions about highway design and about what type of safety features to install are discretionary policy decisions. . . . . A court should not second-guess a governmental unit's decision about the type of marker or safety device that is most appropriate." *Miguel,* 2 S.W.3d at 251. Echoing this statement, Ramirez states in his affidavit that the 3.5 second clearance interval was set appropriately and within the discretionary guidelines stated in paragraph 4B–15 of Texas Manual on Uniform Traffic Control Devices.

■ However, "[t]he retention of immunity for discretionary decisions does not preclude waiver of immunity under another section of the Tort Claims Act." *Bederka,* 36 S.W.3d at 270. Like the appellees in *Bederka,* the plaintiffs here "argue their claims fall within 101.060(a)(2)" under which "[i]mmunity is retained unless the absence, condition, or malfunction of a traffic sign, signal, or warning device is not corrected by the governmental unity with-

in a reasonable time after notice." *Id.* Like the *Bederka* Court, however, we hold the plaintiffs' "allegation relates to the selection of the traffic control device and the decision to utilize particular devices on the date of the accident." *Id.* at 271. "We follow the rationale employed in *Bellnoa;* the Department enjoys immunity from suit regarding its decision to place a particular traffic control signal, even if the signal fails to make the premises safe. The selection of the device employed is not its condition." *Id.; see Bellnoa v. City of Austin,* 894 S.W.2d 821, 825 (Tex.App.—Austin 1995, no pet.).

### Conclusion

Because the plaintiffs' allegations fail to establish a waiver of sovereign immunity, the trial court erred in denying TXDOT's plea to the jurisdiction. We therefore reverse the trial court's order and render judgment in TXDOT's favor.